UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| DIANA HEILMAN,<br><br>    Plaintiff,<br><br>v.<br><br>J. MICHAEL MEMEO, et al,<br><br>    Defendant. | 3:04-CV-00683-LRH-VPC<br><br>ORDER |

Presently before the court are two motions for summary judgment. Defendant J. Michael Memeo filed the first motion (#44[1]). Defendant James Watson filed the second motion (#45). Plaintiff Diana Heilman filed oppositions to these motions (#46 & #50) to which Defendants each replied (#48 & #51).

**I.    Facts and Procedural History**

Viewing the evidence in the light most favorable to Plaintiff, the following narrative describes the facts of this case.

In January 1995, Judge Thomas L. Stringfield hired Plaintiff as a financial secretary and traffic citation coordinator for the Juvenile Probation Department of the Fourth Judicial District Court in Elko, Nevada. When Plaintiff began working at the probation department, she signed a

---

[1] Refers to the court's docket

document with a subject line reading, "Employment with the Juvenile Probation Office." This document contains several items concerning the terms of Plaintiff's employment and her rights if she were to be terminated.

In August 2002, Defendant Memeo became the new presiding judge of the court and, as part of this position, took over the juvenile probation department. That month, Memeo and his colleague Judge Puccinelli called a meeting where Plaintiff was present along with other employees. Judge Puccinelli stated during this meeting that "no one should be concerned about losing their jobs unless there was just cause."

On June 11, 2003, James Watson, the chief juvenile probation officer and Plaintiff's supervisor, called Plaintiff into his office. After Plaintiff entered Watson's office, Watson told Plaintiff, "I do not want to have to fire you, but I request you submit your resignation because you do not fit into the mold." Plaintiff initially told Watson that she would have to think about it, but she then stated that she would leave by noon. Plaintiff wrote a resignation letter and left the court.

After Plaintiff and a majority of the juvenile probation department's employees left the department, all the new female hires were younger, skinnier, and more attractive than Plaintiff. In particular, Plaintiff's replacement, Sue Brietrick, who was initially hired in February 2003 for a different position, was in her mid-forties. Plaintiff was fifty-three when she left the probation department.

After obtaining a right to sue notification from the Equal Employment Opportunity Commission, Plaintiff filed suit in this court, asserting nine claims for relief: (1) First Amendment retaliation under 42 U.S.C. § 1983, (2) sex discrimination under Title VII and age discrimination under the Age Discrimination in Employment Act ("ADEA"), (3) deprivation of due process under § 1983, (4) unconstitutional "custom and policy" under § 1983 (5) wrongful termination, (6) breach of contract, (7) breach of the covenant of good faith and fair dealing, (8) attorneys fees, and (9) injunctive relief.

On September 20, 2005, this court issued an order granting in part Defendants' motion to dismiss. In this order, the court dismissed the Fourth Judicial District Court from this suit on grounds that it is entitled to Eleventh Amendment immunity. However, this court denied Defendants' motion to dismiss Memeo and Watson in their official and individual capacities from this suit.

## II.     Legal Standard

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party bears the burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001).

In order to successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding

1 a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to establish a genuine dispute; there must be evidence on which the jury could reasonably find for the plaintiff. *See id.* at 252.

**III.    Discussion**

    **A.  Procedural and Jurisdictional Matters**

        **1.    Defendants Reachable Under the ADEA**

Before this court considers the merits of this action, there are several procedural and jurisdictional matters that must be addressed. The first of these issues concerns what defendants may be sued under the ADEA. In this court's September 20, 2005, order, the court dismissed the defendant Fourth Judicial District Court on Eleventh Amendment grounds. The court relied upon *Jackson v. Hayakawa*, 682 F.2d 1344 (9th Cir. 1982) as the basis for this decision. Upon reviewing this decision, the court finds that the basis for the dismissal, while harmless, was nonetheless error.

In enacting the ADEA, Congress made clear that it intended to subject states to liability for age discrimination. *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000). In some circumstances, Congress's explicit intent to abrogate the states' Eleventh Amendment immunity is sufficient to permit state liability for damages. *Id.* at 80. However, in *Kimel*, the Supreme Court held that the ADEA is not a valid abrogation of the states' Eleventh Amendment immunity because it is not a proper exercise of Congress's authority under § 5 of the Fourteenth Amendment. *Id.* at 82-83. Therefore, while this court was correct in holding that the Fourth Judicial District Court is immune from suit under the ADEA, this conclusion follows from *Kimel* rather than the Ninth Circuit's decision in *Jackson v. Hayakawa*, which concerned a state's Eleventh Amendment Immunity under 42 U.S.C. § 1983.

This court's September 20, 2005, order also denied Defendants' motion to dismiss Memeo and Watson in their official capacities. The court reasoned Defendants had not provided any

4

evidence that a judgment against Memeo and Watson in their official capacities would be paid by Nevada, and therefore dismissal pursuant to the Eleventh Amendment was inappropriate at that juncture. Upon reviewing the current motions for summary judgment, the court finds Memeo and Watson have still failed to present any evidence that Nevada would pay any judgment against them in their official capacities. As such, this court will continue to entertain Plaintiff's ADEA claim against Memeo and Watson in their official capacities.

Finally, although the issue was not briefed by the parties, the court finds that Memeo and Watson cannot be sued in their individual capacities because they are not "employers" within the meaning of the ADEA. Individual defendants cannot be held liable for damages under the ADEA; rather, only employers may be liable, though they are subject to respondeat superior liability for the acts of their employees. *Miller v. Maxwell's Int'l, Inc.*, 991 F.2d 583, 587-88 (9th Cir. 1993). In this case, Plaintiff has sued Memeo and Watson in their individual capacities. Plaintiff, however, acknowledges that she was employed by the Fourth Judicial District Court's Juvenile Probation Department. (Compl. (#2), at ¶ 4; Heilman Dep. (#44), Ex. 2 at 19:23-20:4.) Therefore, Watson and Memeo in their individual capacities are entitled to partial summary judgment on Plaintiff's ADEA claims.

### 2. Defendants Reachable Under Title VII

This court's September 20, 2005, order also dismissed Plaintiff's Title VII claims against the Fourth Judicial District Court on grounds that the court was entitled to Eleventh Amendment immunity. This conclusion, however, was error. A state may be liable for damages under Title VII for sex discrimination, as Title VII is a valid exercise of Congress's authority under § 5 of the Fourteenth Amendment. *See Okruhlik v. Univ. of Ark.*, 255 F.3d 615, 627 (8th Cir. 2001). Therefore, the State of Nevada and Memeo and Watson in their official capacities are potentially subject to liability under Title VII.

Title VII, however, does not impose liability on supervisory employees in their individual

capacities. *See Miller*, 991 F.2d at 587. Therefore, Memeo and Watson in their individual capacities are entitled to partial summary judgment on Plaintiff's Title VII claims.

### B. Plaintiff's State Law Claims

Plaintiff has asserted three claims for relief under state law: (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, and (3) wrongful termination. The court will consider each of these claims in turn.

#### 1. Breach of Contract

In support of her breach of contract claim, Plaintiff presents two pieces of evidence: (1) a document she signed upon being hired and (2) her deposition testimony regarding a meeting with Judge Puccenelli. Plaintiff argues that this evidence shows she could not have been fired other than for cause, and therefore Defendants breached her employment contract when they asked her to resign. The court disagrees.

Under Nevada law, employment contracts are presumably terminable at will. *Yeager v. Harrah's Club, Inc.*, 897 P.2d 1093, 1095 (Nev. 1995). To overcome this presumption, an employee must provide corroborating evidence when she is claiming her employer made oral promises of long-term employment. *Id.* at 1096. With a few exceptions driven by public policy, an at-will employee can be terminated without liability for any reason or no reason. *Martin v. Sears, Roebuck & Co.*, 899 P.2d 551, 553-54 (Nev. 1995).

In support of her contention that she was a for-cause employee, Plaintiff first offers a document with a subject line reading, "Employment with the Juvenile Probation Office." (Employment Letter (#44), Ex. 1.) This documents states the following in pertinent part:

> Several terms of employment are required of all new court employees. Those terms are as follows:
>
> . . .
>
> 2. As an employee of the Fourth Judicial District Court I acknowledge that my employment may be terminated pursuant to NRS 62.110, which in part states:

6

> Probation officers and employees may be removed, discharged or reduced in position only after having been given the reasons therefore in writing and being afforded an opportunity to be heard before the judge in answer thereto.
>
> I acknowledge that said statute contains no requirement for "cause", or for an "appeal", as do similar statutes which apply to larger counties within Nevada. I further Agree that, other being [sic] told why, and being allowed the right to have my views heard, my employment with the Juvenile Probation Office may be terminated at the discretion of the Juvenile Judge."

(*Id.*)

Plaintiff argues that this document's incorporation of Nevada Revised Statutes section 62.110 affords her due process before termination and therefore "eliminates the essence of 'at will' employment." (Pl.'s Opp'n (#50), at 12.) Plaintiff's argument is not well taken. Section 62.110 does provide that Plaintiff is entitled to a notice and hearing before she may be terminated. However, arguing that these rights convert Plaintiff's employment from at-will to for-cause confuses the consequences of a property right with the right itself. While section 62.110 may provide Plaintiff with rights similar to those she would be afforded if she had a property interest in her employment, this fact does not transform the nature of Plaintiff's employment, which the letter unequivocally states "may be terminated at the discretion of the Juvenile Judge." (Employment Letter (#44), Ex. 1.)

Plaintiff also argues that her employment was for-cause by virtue of a meeting held by Judge Puccinelli, where Puccinelli told employees that "no one should be concerned about losing their jobs unless there was just cause." (Heilman Dep. (#44 ), Ex. 2 at 34:22-24.)  Assuming Puccinelli's statement is admissible, it nevertheless did not modify the terms of Plaintiff's employment. The Nevada Supreme Court has held that "an employee alleging the existence of a long-term employment contract must supply some corroboration that a contract has been formed specifically with that employee. Uncorroborated assertions, alone, do not overcome the presumption of at-will employment." *Yeager v. Harrah's Club, Inc.*, 897 P.2d 1093, 1096 (Nev. 1995).

7

As an initial matter, Puccinelli's statement was made in the context of a meeting with numerous employees; thus, his statement is not sufficient to show that for-cause employment was "formed specifically" with Plaintiff.  Moreover, Plaintiff has provided no corroborating evidence of Puccinelli's promises.  Plaintiff's evidence therefore does not overcome the presumption that her employment was at-will.

### 2. Breach of the Implied Covenant of Good Faith and Fair Dealing

The court's finding that Plaintiff's employment was at-will precludes her claim that Defendants breached the implied covenant of good faith and fair dealing.  *See Martin v. Sears, Roebuck & Co.*, 899 P.2d 551, 562 (Nev. 1995).  The court therefore grants Defendants partial summary judgment on Plaintiff's claim for breach of the implied covenant of good faith and fair dealing.

### 3. Wrongful Termination

Under Nevada law, an at-will employee may only bring a claim for wrongful termination if the termination violates public policy.  *Canada v. Boyd Group, Inc.*, 809 F. Supp. 771, 781 (D. Nev. 1982).  Here, the alleged violations of public policy include age and sex discrimination.  However, this district has found that a claim for wrongful termination does not lie where statutory remedies exist, as in the case of age and sex discrimination.  *Canada*, 809 F. Supp. at 781-82.  Therefore, partial summary judgment on Plaintiff's wrongful termination claim is appropriate, as it rests on age and sex discrimination.

### C. Plaintiff's Federal Claims

### 1. Due Process Violation Under § 1983

Plaintiff's due process claim alleges she was deprived of a "state-created property right and interest" without the required due process to which she was entitled.  However, as an at-will employee, Plaintiff had no protected property interest in her continued employment.  *See Bishop v. Wood*, 426 U.S. 341, 346-47 (1976).  Therefore, no due process claim may lie.  *Id*.  Patrial summary

8

judgment on Plaintiff's due process claim is thus appropriate.

### 2. Exemption for Personal Staff of an Elected Official

In support his motion for summary judgment, Defendant Memeo argues Plaintiff is not entitled to the protections of Title VII and the ADEA because she is a personal staff member of Memeo, an elected official. In support of this contention Memeo cites 42 U.S.C. § 2000e(f) and 29 U.S.C. § 630(f), which exempt personal staff of an elected official from, respectively, Title VII's and the ADEA's protections.

In *Ramirez v. San Mateo County Dist. Attorney's Office*, 639 F.2d 509 (9th Cir. 1981), the Ninth Circuit considered whether Title VII's personal staff exemption extended to a deputy district attorney.[2] In its analysis, the Ninth Circuit considered three factors in concluding the deputy district attorney fell within the personal staff exemption: (1) the plaintiff served at the pleasure of the district attorney, (2) the district attorney had plenary power of appointment and removal, and (3) the plaintiff was not subject to the normal protections of the county civil service system. *Id.* at 513.

In the present case, Memeo has stated only in conclusory terms that all the indicia of the personal staff exemption are present. While the court agrees that some of the evidence presented in this case supports application of the personal staff exemption, the court finds Memeo has not demonstrated the exemption applies as a matter of law. Specifically, the evidence does not conclusively demonstrate that Memeo has plenary power over Plaintiff's appointment and removal. That is, Memeo has not foreclosed the possibility that he must abide by certain guidelines in his appointment and removal powers. Therefore, Memeo has not shown Plaintiff falls within the personal staff exemption as a matter of law.

### 3. Sex Discrimination

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any

---

[2]The Ninth Circuit concluded in a later case that *Ramirez*'s framework for analyzing the personal staff exemption also applies to the ADEA's personal staff exemption. *Monce v. City of San Diego*, 895 F.2d 560, 561 (9th Cir. 1990).

9

individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  To recover on a sex discrimination claim under Title VII, a plaintiff must first establish a prima facie case.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  Once a prima facie case has been established, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employer's conduct.  *Id*.  If the employer supplies a legitimate nondiscriminatory reason, the employee must then show that the stated reason is merely a pretext for discrimination.  *Id*. at 804.

"The requisite degree of proof necessary to establish a *prima facie* case for Title VII . . . on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence.  The plaintiff need only offer evidence which 'gives rise to an inference of unlawful discrimination.'"  *Walis v. J.R. Bimplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994) (citation omitted).  A plaintiff can establish a prima facie Title VII violation by showing that "(1) she belongs to a protected class; (2) she was qualified for her position; (3) she was subject to an adverse employment action; and (4) similarly situated individuals outside her protected class were treated more favorably."  *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008).

In the present case, Plaintiff has failed to present a prima facie case of sex discrimination.  While Plaintiff has made a sufficient showing as to the first three elements of a prima facie case, she has not shown that similarly situated individuals outside her protected class were treated more favorably that she was.

With regard to the first element, Plaintiff, as a female, is a member of a protected class under Title VII.  Second, although there is some conflicting evidence about whether Plaintiff was satisfactorily performing her job (Heilman Dep. (#44), Ex. 2 at 67:13-72:17, 77:23-79:9) the court concludes Plaintiff presented sufficient evidence to show she was qualified for her position.  Specifically, Plaintiff testified in her deposition that she did not ever recall her supervisor, Watson,

saying to her that she was not doing her job properly. (*Id.* at 58:12-13); *See also Cleese v. Hewlett-Packard Co.*, 911 F. Supp. 1312, 1318 (D. Or. 1995) (concluding a plaintiff met the second element of a prima facie Title VII case when she was never reprimanded for the quality of her work).

Third, Plaintiff presents sufficient evidence to show she suffered an adverse employment action. The parties dispute whether Plaintiff suffered a "constructive discharge," which requires a showing that "working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 141 (2004). However, constructive discharge is only one type of adverse action. Where (1) an employer imposes a forced choice of resignation or termination, (2) at-will employment limits an employee's ability to challenge her termination, and (3) there was no reasonable alternative to resigning, an employee's subsequent resignation is involuntary. *See Yearous v. Niobrara County Mem'l Hosp.*, 128 F.3d 1351, 1358 (10th Cir. 1997) (describing the elements of involuntary resignation). An involuntary resignation is a de facto termination, and a de facto termination may satisfy the prima facie requirement of adverse action. *See Clements v. Barden Miss. Gaming, L.L.C.*, 373 F. Supp. 2d 653, 668 (N.D. Miss. 2004) (holding that a de facto termination is sufficient to satisfy the prima facie requirement of adverse action).

Plaintiff has presented sufficient evidence to show her resignation was involuntary. First, as a practical matter, Watson's statement that "I don't want to have to fire you, but I request you submit your resignation because you do not fit into the mold" (Heilman Dep. (#44) Ex.2 at 66:25-67:2) imposed a forced choice of resignation or termination. Second, Plaintiff's at-will employment allowed her be terminated at the discretion of Memeo. (Employment Letter (#44), Ex. 1.) Finally, Watson presented Plaintiff with no other option than to resign. Plaintiff's involuntary resignation therefore suffices to show she suffered an adverse employment action

As to the final element of a prima facie case of sex discrimination, however, Plaintiff has failed to show she was treated less favorably than males subsequently hired by the probation

11

department. In support of her claim that she was discriminated on the basis of her sex, Plaintiff offers her own testimony that "after the original staff eventually left, the majority of the staff originally left and the new staff came on, they were all younger and more attractive, as far as females." (Heilman Dep. (#44) Ex. 1 at 84:6-9.) Plaintiff also testified that her replacement, Sue Brietrick, was more attractive and slender than she is. (*Id.* at 85:23-86:4, 86:23-87:3.)

Given Plaintiff's testimony, there are two possible theories by which Plaintiff could be advancing her sex discrimination claim. The first theory is that her employer discriminated in favor of males because after her departure, the court hired only attractive females but did not impose the same requirement on males. Courts have suggested a plaintiff could present a viable Title VII claim on the basis of discrimination due to appearance when the opposite sex is not subject to the same standard. *See, e.g.*, *Malarkey v. Texaco, Inc.*, 704 F.2d 674, 674-75 (2d Cir.1983) (affirming dismissal when a plaintiff alleged more attractive women were promoted over her, but also recognizing that "[t]he court below noted that if the complaint had alleged that men when compared to women were not subject to . . . beauty criteria in determining their eligibility for promotions, the complaint would have stated a cause of action."); *Alam v. Reno Hilton Corp.*, 819 F. Supp. 905, 913-14 ("Staffing decisions based on [sexual attractiveness] demonstrates a rather atavistic approach on the part of the employer; however, when such criteria are applied to different classes of people, the practice is not actionable.").

The court finds this theory of recovery untenable. As noted by this district in *Alam*, "No Court can be expected to create a standard on such vagaries as attractiveness or sexual appeal." *Alam*, 819 F. Supp. at 914. This court is now squarely presented with this difficulty, as Plaintiff is asking this court to find she has made a showing that less attractive males were hired while she, a less attractive female, was discharged. The trouble with this claim is this court cannot discern a

standard by which a jury would determine Defendants' notion of attractiveness.[3]  It hardly needs to be said that beauty is in the eye of the beholder.

There may be some types of proof that would suffice to present a prima facie case of sex discrimination based on appearance.  For instance, if Plaintiff presented evidence that her supervisors commented that she had an unattractive appearance, this might serve to show that she was discriminated on the basis of her appearance.  However, because Plaintiff has presented only her own testimony in support of this theory, a reasonable juror would not have sufficient evidence to base a finding that her employer discriminated against Plaintiff on the basis of her appearance.

Conceivably, Plaintiff could also advance a claim of sex discrimination based on her testimony that her employer's new hires were more slender than she was.  This theory finds some support in *Gerdom v. Cont'l Airlines, Inc.*, 692 F.2d 602 (9th Cir. 1982), where the Ninth Circuit held that an airline's maximum weight policy that applied to an all-female contingent of flight attendants violated Title VII.  In defending its policy, the airline argued its weight requirement was not discriminatory because the airline only hired women as flight attendants; thus, because no men in the plaintiffs' position were being treated more favorably, the plaintiffs could not claim sex discrimination.  *Id.* at 607.  The court rejected this argument, reasoning that the weight policy violated Title VII because it discriminated against women because they were women:

> A facial examination of the weight program here reveals that it is designed to apply only to females. Where a claim of discriminatory treatment is based upon a policy which on its face applies less favorably to one gender, this court has held that the plaintiff need not otherwise establish the presence of discriminatory intent. It is not necessary to establish that there were male employees similarly situated in order to establish a prima facie case.
> The fact that this policy applied to an intentionally all-female job classification does not alter the analysis or make the policy less facially discriminatory. By [defendant's] own admission, the policy was enforced only against women because it was not merely slenderness, but slenderness of female employees which [the defendant] considered critical.

---

[3]Commentators have also noted this proof problem. *See, e.g.*, Elizabeth M. Adamitis, *Appearance Matters: A Proposal to Prohibit Appearance Discrimination in Employment*, 75 Wash. L. Rev. 195, 222 (2000)) ("Discrimination based on either real or perceived attractiveness or unattractiveness may sometimes be difficult if not impossible to assess or compare.").

13

*Id.* at 608 (citations omitted).  The court therefore held that in light of the airline's facially discriminatory weight policy, the plaintiffs had established sex discrimination as a matter of law. *Id.* at 609.

In view of *Gerdom*'s holding that a policy that discriminates against women because they are women violates Title VII, Plaintiff has at least a colorable claim her employer committed sex discrimination by imposing a weight requirement on her.  This theory, however, takes *Gerdom* a step too far.  Later Ninth Circuit cases have required a showing that similarly situated individuals outside a plaintiff's protected class were treated more favorably than the plaintiff.  *See, e.g.*, *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008).  While *Gerdom* appears to carve out an exception to this requirement by recognizing sex discrimination when a policy discriminates against women because they are women, this theory of recovery loses its force when a plaintiff's job classification also includes men.  Here, Plaintiff testified that the probation department's new female hires were more slender that she was.  Plaintiff, however, has presented no evidence that her employer did not also impose this slenderness requirement on men.  In the absence of such evidence, Plaintiff has failed to make a showing that similarly situated individuals outside her protected class were treated more favorably she was.  Defendants' motion for summary judgment as to Plaintiff's Title VII claim is therefore granted.

      **4.**      **Age Discrimination**

The burdens of proof and persuasion are the same under Title VII and the ADEA.  *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 888-89 (9th Cir. 1994).  "The requisite degree of proof necessary to establish a *prima facie* case for . . . ADEA claims on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence.  The plaintiff need only offer evidence which 'gives rise to an inference of unlawful discrimination.'"  *Id.* (citation omitted).  A plaintiff establishes a prima facie ADEA violation by showing that (1) she was at least forty years old, (2) she was terminated, (3) she was performing her job satisfactorily, and (4) she was either

14

1  replaced by substantially younger employees with equal or inferior qualifications or discharged
2  under circumstances otherwise giving rise to an inference of age discrimination.  *Diaz v. Eagle*
3  *Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008).

4  In this case, Plaintiff has established the first three elements of a prima facie case but has
5  failed to make a sufficient showing as to the fourth.  First, it is undisputed that Plaintiff was fifty-
6  three years old when she was asked to resign.  Second, the evidence suggesting Plaintiff
7  involuntarily resigned is sufficient to show she was terminated.  Third, the evidence Plaintiff
8  presented in support of her sex discrimination claim to show she was qualified for her position also
9  suffices to show she was performing her job satisfactorily.  As to the fourth element, however,
10 Plaintiff has not made an adequate showing that she was either replaced by substantially younger
11 employees with equal or inferior qualifications or discharged under circumstances otherwise giving
12 rise to an inference of age discrimination.  While Plaintiff has presented evidence that she was
13 replaced by a woman about eight years younger than she was (Heilman Dep. (#44) Ex. 1 at 86:14-
14 16) Plaintiff has made no showing that her replacement was equally or less qualified than Plaintiff.
15 As this showing is necessary for Plaintiff to establish the fourth element of prima facie case of age
16 discrimination, Defendants are entitled to partial summary judgment on Plaintiff's ADEA claim.

**D.  Remaining Claims**

18 Defendants have also moved for summary judgment as to Plaintiff's first, fourth, eighth,
19 and ninth claims for relief.  These claims are, respectively, first amendment retaliation under 42
20 U.S.C. § 1983, an unconstitutional "custom and policy" under § 1983, attorneys fees, and injunctive
21 relief.

22 Defendants are entitled to summary judgment on Plaintiff's first amendment retaliation
23 claim, as the only aggrieved person referenced in that claim is Erma Turnball, who was severed


from this case.[4]  Furthermore, because Defendants are entitled to partial summary judgment on Plaintiff's § 1983 due process claim, her claim for "custom and policy" has no continued relevance, as a claim with respect to an unconstitutional custom or policy must be predicated on a constitutional violation.  *See Jackson v. City of Bremerton*, 268 F.3d 646, 653 (9th Cir. 2001). Because Defendants have shown as a matter of law that Plaintiff has not endured a constitutional violation, Plaintiff's "custom and policy" claim also fails.

With regard of to Plaintiff claims for attorneys fees and injunctive relief, because Plaintiff has failed to show a triable issue as to any of her substantive claims for relief, Plaintiff is not entitled to the attorney fees as a prevailing party under § 1988.  Furthermore, injunctive relief is also foreclosed because Defendants have shown as a matter of law there is no unlawful behavior to remedy.

### IV.     Conclusion

As a matter of law, Defendants have shown Plaintiff was an at-will employee.  Plaintiff therefore cannot sustain her claims for breach of contract and breach of the implied covenant of good faith and fair dealing.  Plaintiff also cannot sustain a claim for wrongful termination, as this district has determined Nevada law does not recognize a "public policy" exception to termination on the basis of sex or age.  Finally, Plaintiff has failed to make a prima facie showing that she was discriminated against on the basis of her age or sex.  Summary judgment for Defendants is therefore warranted.

///
///
///
///

---

[4]Moreover, Plaintiff has presented no evidence that she was retaliated against on the basis of her speech.

16

IT IS THEREFORE ORDERED that Defendants' motions for summary judgment (#44 & #45) are GRANTED.

The court clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.

DATED this 27th day of June 2008.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE