1 | JAMES ANDRÉ BOLES, ESQ.
Nevada Bar No. 003368
2 | 411 Mill Street
Reno, Nevada 89502
3 | Tel: (775) 329-1544

4 | Attorney for Plaintiff

5

6

7 | **UNITED STATES DISTRICT COURT**

8 | **DISTRICT OF NEVADA**

9

10 | **DIANA HEILMAN,**

11 |      **Plaintiff,**                Case No. **3:04-cv-0683-ECR-VPC**

12 |      **v.**                        **PLAINTIFF'S MOTION FOR**
**J. MICHAEL MEMEO,** Individually and in    **SUMMARY JUDGMENT**
13 | His official capacity as Chief Administrator of
the Fourth Judicial District Court of the State of
14 | Nevada in and for the County of Elko; **JAMES
WATSON**, Individually and in his official
15 | Capacity as a Chief Juvenile Probation Officer;
The **STATE OF NEVADA**, Ex. Rel. the
16 | **FOURTH JUDICIAL DISTRICT COURT
OF THE STATE OF NEVADA IN AND FOR**
17 | **THE COUNTY OF ELKO**;

18 |         Defendants.

19

20 |       COMES NOW the Plaintiff herein, by and through counsel, and files her Motion For

21 | Summary Judgement. This motion is based on the attached Memorandum of Points and Authorities,

22 | and all pleadings, papers, and documents on file herein.

23 |       Dated this 11<u>th</u> Day of May, 2010.

24

25 |                                  /s/
                           James André Boles, Esq.
26 |                            Attorney for Plaintiff

27

28

1

## MEMORANDUM OF POINTS AND AUTHORITIES

### Introduction

3   The plaintiff in this matter, Diana Heilman, filed this wrongful termination action alleging that

4   she was wrongfully terminated from her clerical government employment by being forced to

5   surrender that employment in 2004. At the time she was forced from her employment, she had been

6   working for more than eight years as a secretary and traffic citation coordinator in the Juvenile

7   Probation Department of the Fourth District Court of the State of Nevada in and for the County of

8   Elko.  The one remaining defendant in this matter, J. Michael Memeo, had become one of the two

9   judges in that court shortly before plaintiff lost her employment, and in that capacity he was the

10  official in charge of the probation office.  After being forced from her employment, the plaintiff filed

11  this civil rights action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et*

12  *seq*.   She also alleged that she was deprived of due process in being forced summarily to resign

13  without reason, and she added state claims for Breach of Contract and Bad Faith, as well as praying

14  for certain injunctive relief and for attorney's fees.

15  Defendants filed a Motion for Summary Judgment in this Court and on June 27, 2008 that

16  motion was granted (Dkt # 52). Plaintiff filed a Notice of Appeal (Dkt # 55). The matter was briefed

17  and on November 20, 2009, the Ninth Circuit Court of Appeals handed down a Memorandum

18  Remanding in part and Affirming in part the Issues on Appeal (Dkt # 63).

19  The USAC found that "Heilman has created an issue of fact as to whether her resignation was

20  voluntary. Heilman's supervisor demanded her resignation, and she complied".   As a result of the

21  Appeals Court's determination, the matter was remanded on the Breach of Contract and Bad Faith

22  claims.

### FACTS

24  Heilman began her employment with the Elko County on January 23, 1995.  At that time she

25  signed an Employment Contract with the Fourth Judicial District Court of Nevada's Juvenile

26  Probation Department.

27  The Contract specifically and expressly provided for a statement of "reasons" for termination

28  in <u>writing</u> and specifically and expressly provides for "an opportunity to be heard" before the "judge

1 in answer thereto".

2    The Plaintiff entered into the contract and expressly agreed to abide by NRS 62.110 which

3 reaffirms her right, both contractually and statutorily, to written notice of "reasons" for the proposed

4 termination and her right to be "heard before the judge in answer thereto."

5    On June 11, 2003 Memeo, through Watson constructively terminated Heilman without

6 written notice of "reasons" and thereby deprived her of her right to written notice of "reasons" and of

7 her right to "be heard before the judge in answer thereto".

## POINTS AND AUTHORITIES AND ARGUMENT

### Summary Judgment Standards

10    Summary judgment operates as "an integral part of the federal rules as a whole, which are

11 designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. V.*

12 *Catrett*, 477 U.S. 317, 327 (1986).  It serves to avoid unnecessary trials when there is no dispute as to

13 the facts before a court. *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.,* 18 F.3d 1468, 1471 (9th

14 Cir. 1994).  Such judgment is not appropriate, however, where reasonable minds can differ on the

15 material facts at issue. *Warren v. City of Carlsbad,* 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 516

16 U.S. 1171 (1996).  The moving party, then, is entitled to summary judgment only where there are no

17 genuine issues of material fact in dispute, based upon viewing the evidence and the inferences arising

18 therefrom in favor of the nonmovant; and given such a circumstance, the movant is entitled to judgment

19 as a matter of law.  Fed.R.Civ.P. 56(c); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197.  Put another way, only

20 when there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party,

21 is summary judgment appropriate. The moving party bears the burden of informing the court of the basis

22 for its motion, together with evidence demonstrating the absence of any genuine issue of material fact.

23 *Celotex*, 477 U.S. at  323.

24    In considering a motion for summary judgment, the court is obligated to (1) determine whether

25 a fact is material; (2) determine whether there is a genuine issue for the trier of fact, as determined by the

26 documents submitted to the court; and (3) consider the evidence in light of the appropriate standard of

27 proof. As to materiality, only disputes over facts that might affect the outcome of the suit under

28 governing law will properly preclude the granting of summary judgment.  Irrelevant or unnecessary

1  factual disputes are not to be considered.

2  **Argument and Analysis**

3  This is a matter in which there was a constructive discharge, which might have been permissible

4  under Nevada law, except that it was not accomplished pursuant to the agreement. As noted, the

5  appellate court  found that "Heilman has created an issue of fact as to whether her resignation was

6  voluntary. Heilman's supervisor demanded her resignation, and she complied". Defendant in this matter

7  has never disputed that Heilman was told to "resign or you will be terminated".  Therefore, it is

8  respectfully submitted that summary judgment for Heilman should be granted.

9  The mischief in this matter begins with the hearing agreement, an imprecise and confusing

10  document that, by inference, one has to sign as a condition of employment in the Fourth District Court's

11  probation office.  That agreement contains terms under which the employer must operate.  First, by

12  reference to statute (NRS 62.110) it provides certain requirements for termination or demotion.  The first

13  is that before such an action can occur, the subject of the action must be "given the reasons therefor in

14  writing."  As the facts  demonstrate, that right was not afforded by the defendant and his lieutenant

15  (Watson).  Second, it requires that the subject be "afforded an opportunity to be heard before a judge."

16  That was denied via the resign-or-else condition.'

17  The terms of the agreement amount to provision for notice of adverse action and opportunity to

18  challenge it. Ergo, by its own voluntary act, the employer provided a process which it is bound to follow.

19  By necessity, that gives rise to the existence of a remedy adequate at law.

20  By attaching the right to written notice and opportunity to be heard to a clerical probation office

21  post eliminates the essence of "at will" employment, that is, employment which is terminable without

22  cause or redress.  As a result, subsequent language about "no requirement for 'cause', or for an 'appeal,'"

23  should be deemed impermissibly contradictory and correspondingly of no force and effect. The partially

24  quoted statute affords an aggrieved probation office employee  the right to know the "reasons" and air

25  a grievance before the  judge who will decided the employee's fate. Such a process provides insurance

26  that the deprivation of one's livelihood not be done lightly.  This is not some meaningless act.  The maxim

27  is that the law abhors a useless act, and the taking of one's occupation with no possibility of remedy

28  would certainly be useless.  The non-statutory language in the hearing agreement to the effect that

4

James Andre Boles, Esq244

1  probation office employment could be terminated "at the discretion of the juvenile judge" with only a

2  right to be "have my views heard" and be told "why" creates an actual right. No adverse action can be

3  taken without compliance with the requirement. Not hardly a useless act.

4         In the case at bar, there is an agreement which is set forth in a written and signed document

5  together with the conduct of the parties in exchanging work and services for pay. It is an at-will

6  agreement only insofar as the requirement for notice of "reasons" and "opportunity to be heard" is

7  complied with. Further, it is blackletter law that an agreement between parties to exchange labor for pay

8  is a contract of employment, despite some contentions that certain work appointments do not constitute

9  contracts of employment. It is respectfully urged herein that Judge Memeo functioned under an

10  obligation of good faith and fair dealing in supervising court and probation workers under him, that by

11  directing Watson to get rid of Heilman he violated that obligation and that the purported discretionary

12  act was in fact an act that abused that discretion impermissibly.

13         The Ninth Circuit Memorandum relies on *Knappenberger v. City of Phoenix,* 566, F.3d 936, 940-

14  941 (9th Circuit 2009)

15                 We have acknowledged, however, that an employee may demonstrate that
                   the decision to resign or retire was involuntary under circumstances not
16                 involving intolerable or discriminatory working conditions. In Kalvinskas
                   v. California Institute of Technology, 96 F.3d 1305 (9th Cir. 1996), a
17                 long-time employee was effectively given a choice between retiring and
                   receiving his pension or remaining employed but having the disability
18                 benefits he was receiving reduced to nothing. We held that, because "a
                   reasonable person in [his] position would feel he had no choice but to
19                 retire," Kalvinskas's retirement was involuntary for purposes of ADEA's
                   prohibition of retirement plans that require or permit involuntary
20                 retirement. Id. at 1308. We deemed Kalvinskas's choice to be involuntary
                   not because of discriminatory or intolerable working conditions, but
21                 rather, because of the coercion inherent in the choice between retirement
                   and a complete deprivation of income. Id.; see also Lojek v. Thomas,
22                 716 F.2d 675, 683 (9th Cir. 1983)
                   Page 941
23                 (suggesting an employee coerced into resigning could demonstrate he left
                   his employment involuntarily).
24
        This goes to the heart of the matter. Defendant has never disputed that Heilman was told to either
25
   resign or be terminated. Facing the inevitable humiliation of being fired, she chose not to wear the stigma
26
   of a termination but instead gave her resignation in order to maintain some dignity in the process. Prior
27
   to the resignation, Heilman's performance was without complaint. She was offered no work related
28

1  causes for the demand to quit, she was merely told that she would be fired. Her decision to retire was

2  reasonable. In *Knappenberger,*

> Our conclusion in Kalvinskas that an employee's reasonable decision to
> retire can amount to an involuntary retirement under some circumstances,
> and our willingness to consider employment claims based on a theory of
> coercion, is consistent with rulings in our sister circuits. The Third,
> Fourth, Eighth, Tenth and Eleventh Circuits have adopted a "duress or
> coercion" theory under which "a resignation may be found involuntary if,
> from the totality of the circumstances, it appears that the employer's
> conduct in requesting or obtaining the resignation effectively deprived
> the employee of free choice in the matter." Angarita v. St. Louis County,
> 981 F.2d 1537, 1544 (8th Cir. 1992) (internal quotation marks omitted);
> see also Leheny v. City of Pittsburgh, 183 F.3d 220, 227-28 (3rd Cir.
> 1999); Hargray v. City of Hallandale, 57 F.3d 1560, 1568 (11th Cir. 1995)
> (per curiam); Parker v. Bd. of Regents, 981 F.2d 1159, 1162 (10th Cir.
> 1992); Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 167, 173 (4th
> Cir. 1988); cf. Pennsylvania State Police v. Suders, 542 U.S. 129, 141,
> 124 S.Ct. 2342, 159 L.Ed.2d 204 (2004) (noting that the constructive
> discharge concept was originally developed by the National Labor
> Relations Board to address situations in which employers coerced
> employees to resign). Accordingly, the district court's ruling that
> Knappenberger could not establish he was deprived of a liberty or
> property interest because he did not allege he retired after facing
> "intolerable and discriminatory working conditions" was too limited; a
> retirement or resignation may be involuntary and constitute a deprivation
> of property for purposes of a due process claim in the absence of
> intolerable working conditions.

16  It would be specious to suggest that Ms. Heilman resigned voluntarily. Her undisputed deposition

17  testimony indicates she had every reason to believe that she was performing her job well and was not

18  vulnerable to discipline of any kind when Watson summoned her into his office and demanded her

19  resignation or suffer termination. In shock, and within minutes, she acceded to the demand. She did not

20  think it over. She did not get counsel. She consulted with no one. She simply folded.

21  "I was just flabbergasted . . . stunned," she recalled later. Under the circumstance, acceptance of her

22  resignation was reprehensible.

23  "A constructive discharge occurs when a person quits his job under circumstances in which a

24  *reasonable person* would feel that the conditions of employment have become intolerable." *Draper v.*

25  *Coeur Rochester*, 147 F.3d 1104, 1110 (9th Cir. 1998), quoted in *Lawson v. State of Washington*, 296

26  F.3d 799, 805 (1998) The circuit opinion, on the same page, had these additional words from *Draper*:

27  "[A]n employee need not demonstrate that his employer intended to force him to resign, but merely that

28  his conditions of employment were objectively intolerable."

1    In the case at hand, Mrs. Heilman certainly was pushed to a point where her "conditions of

2  employment were objectively intolerable" when she was directed to resign or be fired.  It is farcical to

3  say she resigned voluntarily; she was constructively discharged. This prohibition on the unbridled, and

4  especially the abusive, exercise of discretion is recognized in Nevada–as a matter of fundamental fairness.

5  This state's law incorporates this spirit of fairness by implying a covenant of good faith and fair dealing

6  in contracts both generally, and in contracts for employment, specifically, as follows:

7    "**Obligation of good faith**.  Every contract or duty within the Uniform Commercial Code

8  imposes an obligation of good faith in its performance and enforcement."  (NRS 104.1304) This statute

9  was revised by the Legislature in 2005, and formerly read: "**Obligation of Good faith**.  Every contract

10  or duty within this chapter imposes an obligation of good faith in its performance or enforcement."  The

11  change was to add the words "within the Uniform Commercial Code."  The earlier version, although part

12  of this State's Uniform Commercial Code, had been extended by the Nevada Supreme Court as well as

13  federal courts to contracts of employment.  Reviewing courts had said the obligation of good faith inheres

14  in *every* contract. *K Mart v. Ponsock*, 103 Nev. 39, 732 P.2d 1364, (1987); *Smith v. Claudianos*, 104

15  Nev. 67, at 69, 752 P.d. 233 (1988); *Hutton v. General Motors Corp*., 775 F.Supp. 1373, at 1380, (D.

16  Nev. 1991).

17    It is respectfully suggested here that no legislator, and presumably no court, would admit or seek

18  a finding to the effect that Nevada has formally abandoned good faith as a fundamental in enforcement

19  of its laws regarding agreements under which state employees work.  Correspondingly, it is appropriate

20  that it be found in matter that Mrs. Heilman is correct in asserting that, "They have to have cause," and

21  "I needed to do something bad for them to fire me."

22    During this process, Judge Memeo never contended via deposition testimony, affidavit or other

23  assertion that he had no part in getting rid of Mrs. Heilman.  He was Watson's supervisor, directing him.

24  In Heilman's view, "[H]e was the overseer of the whole department, so he was basically my main boss."

25   (Mrs. Heilman Deposition Transcript, Deft.'s Ex. 2, 73:11-13)

26                              **INJUNCTIVE RELIEF**

27    The just, proper remedy in this matter is to grant Heilman Injunctive Relief. Defendants should

28  be ordered to: 1) reinstate Heilman to her former employment position; 2) direct that the reinstatement

1    shall be made with the same rate of pay that existed before the constructive discharge took place plus all

2    raises attendant to her former position, including all back pay, damages and lost benefits, all with interest

3    at the applicable statutory rates.

4            General damages should be determined at a jury trial.

5                                              **CONCLUSION**

6            WHEREFORE, it is respectfully contended that summary judgment should be granted to Plaintiff

7    Heilman, principally on the ground that Defendant caused Mrs. Heilman to lose her job in the Fourth

8    District Court probation office wrongfully.  The motivating factor has no bearing on this matter. This was

9    a capricious act that denied a person who had faithfully and competently served the Juvenile Probation

10   Department in Elko for eight plus years and was thrown out like stale food.

11           Plaintiff was a party to an employment contract as defined above.  When Judge Memeo chose to

12   terminate her without the notice and "opportunity to be heard" as  promised, that contract was breached.

13   Plaintiff seeks reinstatement pursuant to that breach.  Reinstatement will allow the employer to halt the

14   ongoing damages and lessen the impact of whatever other damages that are forthcoming. Plaintiff will

15   then be able to proceed to trial to resolve the remaining issues. Based on the law of the case, i.e., the

16   Ninth Circuit Court of Appeal's finding that Plaintiff "created an issue of fact as to whether the

17   resignation was voluntary", that issue of fact can be readily resolved.  That question is already answered

18   since there is no dispute regarding whether she had a viable choice.  The uncontroverted facts support

19   that she was constructively terminated and did not resign of her own volition.

20           DATED 11<u>th</u> Day of May, 2010

21

22                                                        /s/
                                                  James André Boles, Esq.
23                                                Nevada Bar No. 003368
                                                  411 Mill Street
24                                                Reno, Nevada 89502
                                                  Tel: (775) 329-1544
25
                                                  Attorney for Plaintiff
26

27

28

**CERTIFICATE OF SERVICE**

Pursuant to FRCP 5, I hereby certify that I am an employee of the law offices of JAMES ANDRÉ

BOLES and that on this date, I served a true and correct copy of the foregoing document by:

_____        Depositing for mailing, in a sealed envelope, U.S. Postage prepaid, at Reno, Nevada.

_____        Reno/Carson Messenger Service.

_____        Personal Delivery.

_____        Facsimile.

___X___        E-Filing

addressed as follows:

William C. Jeanney, Esq.
BRADLEY, DRENDEL &
JEANNEY, Ltd.
401 Flint Street
Reno, Nevada 89501
Attorney for Defendant Memeo

Catherine Cortez Masto
Attorney General
Kristen Geddes
Deputy Attorney General
Litigation Division
100 N. Carson Street
Carson City, Nevada 89701-4717
Attorneys for Defendant Watson

DATED this 11th day of May, 2010.



_____
              /s/ Ursula
An Employee of James André Boles

James André Boles, Esq.

Page 1 of 2

## AFFIDAVIT OF DIANA HEILMAN

STATE OF NEVADA  )
                      )ss.
COUNTY OF ELKO   )

I, Diana Heilman, being first duly sworn according to law, deposes and says:

1. That I am the plaintiff on this case Heilman v. Memeo No. 3:04-cv-0683-ECR-VPC.

2. That I worked for over eight years for Juvenile Probation Department as Financial Secretary / Traffic Citation Coordinator.

3. That I worked for three judges. Judge Thomas L. Stringfield, Judge Jack B. Ames, and Judge J. Michael Memeo.

4. That my ultimate supervisor was the judge assigned to administer Juvenile Probation.

5. That for the nine months and a half prior to my discharge, I worked for Judge Memeo.

6. That I was told on June 11, 2003, that I "did not fit the mold" and could resign or be summarily discharged.

7. That I had no idea why I was being terminated since I had always and continued to perform her job competently.

8. That I was never provided with any reasons in writing as to why I was being terminated.

9. That I was not given an opportunity to be heard by Judge Memeo.

10. That I quit my job involuntarily.

11. That the reason I resigned was because I was told I had no recourse and feared that a termination on my employment record would render me unemployable.

12. That I feared that the blight of a termination on my employment record would render it difficult to care

for my husband who (now deceased) had serious health issues.

13. That upon information and belief and therefore accept as true.

FURTHER AFFIANT SAYETH NOT

*Diana Heilman*    May 12, 2010

Diana Heilman

SIGNED AND SWORN to before

me this day of May, 2010.

by Diana Heilman

NOTARY PUBLIC    State of nevada    County of Elko

*Renae McConnell*    May 12, 2010



RENAE MCCONNELL
Notary Public - State of Nevada
Appointment Recorded in Elko County
No: 03-81841-6 - Expires April 30, 2011