CATHERINE CORTEZ MASTO
Attorney General
CLARK G. LESLIE
Senior Deputy Attorney General
Nevada Bar No. 10124
Bureau of Public Affairs
Public Safety Division
100 North Carson Street
Carson City, Nevada 89701-4717
Tel:   (775) 684-1258
Fax:   (775) 684-1275

*Attorneys for Defendant James Watson*

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| DIANA HEILMAN, | Case No. CV-N-04-0683-ECR-VPC |
| Plaintiff, | |
| vs. | **DEFENDANT WATSON'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (#69)** |
| J. MICHAEL MEMEO, *et al.*, | |
| Defendants. | |

Defendant JAMES WATSON, by and through his counsel, Catherine Cortez Masto, Attorney General of the State of Nevada, and Senior Deputy Attorney General Clark G. Leslie, file "Defendant Watson's Opposition to Plaintiff's Motion for Summary Judgment."

This Opposition is based upon the Memorandum of Points and Authorities herein, the attached Exhibits, the Court file, Rule 56,[1] Local Rule 56-1 and such other and further evidence as the Court deems appropriate to consider.

///

///

///

---

[1] All citations to "Rule" reference the Federal Rules of Civil Procedure unless otherwise noted.

## I. QUESTIONS PRESENTED

A. Should the Court strike Plaintiff's ("Heilman") Motion for Summary Judgment *sua sponte* for failure to comply with Local Rule ("LR") 56-1 for failing to "include a concise statement setting forth each fact material to the disposition of the motion which the party claims is or is not genuinely in issue"?

B. Does the "Law of the Case" doctrine serve to narrowly define the sole issue before this Court as a breach of contract question relative to the language of the now-repealed NRS 62.110?

C. Is the "contract" identified by the Ninth Circuit's "Memorandum" void under the undisputed facts of this litigation as a matter of law?

D. If the Court determines the "contract" is not voidable, do the undisputed facts establish that the requirements of NRS 62.110 were met?

E. Where the letter of employment does nothing more than repeat the language of NRS 62.110, can any undisputed facts establish a contractual benefit denied by the conduct of the Defendants?

F. Do the principles of "at will" employment serve, as a matter of law, to negate any cognizable harm arising from the conduct of the Defendants even if a "breach of contract" is found to have occurred as a result of the conduct of the Defendants?

G. Would granting summary judgment violate public policy in relation to Nevada's "at will" employment principles?

## II. SUMMARY OF ARGUMENT

The "Memorandum" issued by the Ninth Circuit on November 20, 2009 upheld the District Court's dismissal of all the Claims (state and federal) in Heilman's Complaint except for her Sixth Claim for Relief seeking damages for a breach of contract. The "Law of the Case" doctrine compels Heilman to narrowly construct the advocacy of her case and the issues presented in her Motion for Summary Judgment to that precisely defined issue on remand.

///

Office of the
Attorney General
100 N. Carson St.
Carson City, NV
89701-4717

1    Heilman has failed to argue her Motion within the boundaries of the Ninth Circuit's
2 remand instructions.  As such, all arguments she presents to the Court that stray from the
3 remand that is exclusively restricted to a "contract" arising from the letter of appointment[2]
4 which merely repeats the language of NRS 62.110 should be ignored and stricken.
5    Heilman has also failed to abide by a fundamental procedural rule that is mandatory in
6 nature; LR 56-1 states that a Motion for Summary Judgment *shall* include a concise
7 statement of material facts germane to the issues raised by the Motion.  Case law has
8 consistently upheld court orders that deem the opposing party's presentation of undisputed
9 facts as conclusively determined when procedural rules such as LR 56-1 are violated or
10 ignored.
11    The appellate-determined existence of a "contract" is merely the initial point of analysis
12 and inquiry in relation to Heilman's Motion for Summary Judgment.  An existing contract can,
13 by operation of law, be void or voidable when its formation or insult to public policy compels
14 non-enforcement.  The incongruous requirements pursuant to NRS 62.110 of a writing
15 describing the rationale for termination and the opportunity to appear before a judge as pre-
16 conditions of being dismissed from employment with the Juvenile Court are counter-intuitive
17 to every aspect of "at will" employment.
18    Notwithstanding this anomalous circumstance, the undisputed facts remarkably
19 establish that the aberrant requirements of NRS 62.110 were actually fulfilled.  A judge was
20 present to whom Heilman could have "been heard" and Heilman herself notated the reasons
21 in writing for her termination.
22    In rejecting Heilman's Motion for Summary Judgment the Court can honor the Ninth
23 Circuit's remand holding *and* sustain the important public policy principles that are the
24 underpinnings of "at will" employment law.  The appellate court's statutorily-created "contract"
25 can be granted existence in this litigation but thereafter it must also be deemed void or
26 voidable.  Such a result is compelled due to formation, consideration, vagueness and public

---

[2]  The Ninth Circuit's "Memorandum" (November 20, 2009, *see,* below) that remanded this litigation to the District Court uses the term "appointment letter" at page 4 to describe the employment letter (January 23, 2995, *see,* below) that resulted in the remand.

Office of the
Attorney General
100 N. Carson St.
Carson City, NV
89701-4717

policy deficiencies that negate any recognition of the "contract" as a basis for the recovery of damages.

Instead, the Court may determine the letter of appointment for what it is: a pseudo-agreement, born of statutory oversight and misadventure that merits no further relevance or importance as would be given to a cancelled check or symbolic gesture. NRS 62.110 had no impact, whether followed to the letter or not, in the ultimate outcome of the termination.

The overriding theme of this Opposition is the time honored principle that:

> It is one of the great maxims of interpretation to keep always in view the general scope, object, and purpose of the law, rather than its mere letter. A rigid and literal reading would, in many cases, defeat the very object of the statute, and would exemplify the maxim that 'the letter killeth, while the spirit keepeth alive.' Every statute ought to be expounded, not according to the letter, but according to the meaning (citations omitted).

*Lynip v. Buckner*, 22 Nev. 426, 440 (1895)

Finally, Watson does not concede by any measure that the comments attributed to him or the events at the meeting of June 11, 2003 as recounted by Heilman are accurate. In fact, the Rule 26 Responses produced by Defendant Mimeo dated June 27, 2007 (*see,* Exhibit E) include Memoranda from Watson that:

1. Ascribes the "don't fit the mold" comment *to Heilman* not Watson;
2. Denies that the June 11, 2003 meeting was for the purpose of terminating Heilman (it was, instead, to discuss a performance issue);
3. Heilman asked if she was being "fired" and she was told she was not being terminated;
4. Heilman was angry at the June 11, 2003 meeting after being advised of multiple performance issues and voluntarily stated she "might as well quit";
5. Heilman was told by Watson that her resignation would be accepted;
6. Heilman drafted and signed the Letter of Resignation (Exhibit D, *infra*), gave this letter to Watson and thereafter left the building; and
7. Watson did not submit the letter to payroll until later in the afternoon of June 11, 2003 as Watson believed Heilman might return "to further discuss her matter."

///

For purposes of this Opposition, Watson is proceeding upon the Rule 12 standard of accepting as true the assertions of fact made by Heilman at her deposition (and elsewhere) that Watson terminated her for the stated reason that she did not "fit the mold." Watson argues that the Motion for Summary Judgment should be denied because even if Heilman's version of what transpired on June 11, 2003 is accurate she is not entitled to pursue a claim for a breach of contract as a matter of law.

By deciding the Motion now before the Court on the basis of accepting the allegations of Heilman as accurate, as well as concurrently finding that issues of material fact exist, the Court may deny the Motion *and* dismiss the lawsuit *sua sponte* because the legal effect of applying the undisputed facts to the allegations of Heilman's Sixth Claim for Relief leaves no surviving fact or issue to litigate.

## III. CONCISE STATEMENT OF UNDISPUTED FACTS

Pursuant to LR 56-1, the NDOC offers the following "concise statement" of facts material to the disposition of this Motion that are not genuinely at issue.

| UNDISPUTED FACT | SUPPORTING AUTHORITY |
|---|---|
| 1. Heilman began her employment with the Juvenile Probation Office of the Fourth Judicial District Court for the State of Nevada on January 23, 1995. | Exhibit A, "Letter of Appointment" dated January 20, 1995 signed by Juvenile Judge Thomas L. Stringfield and Heilman nee Diana Underwood on January 23, 1995. |
| 2. Heilman acknowledged that her employment "may be terminated pursuant to NRS §62.110." | *Id.* at ¶ 2. |
| 3. Heilman acknowledged that §62.110 does not require termination for "cause" or an "appeal." | *Id.* |
| 4. Heilman was an "at will" employee at all relevant times. | Exhibit B, "Memorandum" U.S. Court of Appeals for the Ninth Circuit, filed November 20, 2009, page 3. |
| 5. Heilman resigned from her employment after a meeting with Watson on June 11, 2003; Heilman claims that she was being terminated because Watson stated she did not "fit into the mold." | Exhibit C, Deposition Transcript of Diana Heilman dated April 26, 2006, 66:24-67:2. |

| | | |
|---|---|---|
| 1 | 6. Heilman was requested to submit her resignation at the June 11, 2003 meeting. | *Id.* at 76:16. |
| 2, 3 | 7. Heilman agreed to submit her resignation and did so in writing after considering her options. | Exhibit D, Letter of Resignation dated June 11, 2003, signed by Diana Heilman; Exhibit C (Heilman Depo.), *supra*, 76:18-25. |
| 4, 5, 6 | 8. Heilman documents, in writing, the alleged statement by Watson that was the reason for the termination: "It seems that Mr. Watson feels, at this time, that I do not fit into the mold." | *Id.* |
| 7, 8 | 9. Defendant Watson, Judge Wong and Heilman were the only persons present at the June 11, 2003 meeting. | Exhibit C, *id.*, 66: 13-22. |
| 9 | 10. Heilman filed her Complaint, 3:04-cv-0683-ECR-VPC on November 23, 2004 which set forth nine Claims for Relief. | PACER #2. |
| 10, 11, 12 | 11. Defendant Watson filed a Motion for Summary Judgment on 10/26/07; Defendant Mimeo filed a Motion for Summary Judgment on 10/19/07. | PACER #s 45 and 44. |
| 13, 14 | 12. U.S. District Court Judge, Hon. Larry R. Hicks granted summary judgment for Defendant Watson and Mimeo as to all claims. | PACER #52, "Order" filed 6/27/08, Judge Hicks, page 16. |
| 15 | 13. Heilman filed her Notice of Appeal on 7/23/08. | PACER #55. |
| 16, 17, 18, 19 | 14. The Ninth Circuit issued its "Memorandum" on November 20, 2009 which upheld the dismissal by summary judgment of all claims except the Sixth Claim for Breach of Contract holding that the "appointment letter" was "enforceable as a matter of contract" pursuant to NRS 62.110. | Exhibit B, *supra*, *passim*. |
| 20 | 15. NRS 62.110 was repealed in 2004. | *See,* NRS 62.110 (Michie's 2002 and 2004). |
| 21, 22 | 16. Heilman never requested an "opportunity to be heard before the judge in answer thereto" pursuant to NRS 62.110 or the appointment letter. | Exhibit C, Deposition of Heilman, *supra*, *passim*. |
| 23, 24, 25 | 17. Heilman was never denied the "opportunity" to appear before a judge to comment upon or argue against her termination. | *Id.* |
| 26, 27 | 18. Enforcement of NRS 62.110 (notice and writing) in relation to Heilman's termination "eliminates the essence of 'at will' employment." | Admission by Heilman in her current "Motion for Summary Judgment" (#69), page 4, line 21. |

Office of the
Attorney General
100 N. Carson St.
Carson City, NV
89701-4717

| | |
|---|---|
| 19. Watson's rejection of Heilman's version of the events that transpired on June 11, 2003 are set forth in Memoranda to Judge Mimeo and Carlos D. Romo (Nevada Equal Rights Commission) dated June 11, 2003 and February 17, 2004, respectively. | Exhibit E, Memoranda authored by Watson in the course and scope of his employment and maintained as a business record; authenticated pursuant to Fed.R.Evid. 901 (a) (7); admissible pursuant to Fed.R.Evid. 1005. |

## IV.   ANALYTICAL REVIEW OF RELEVANT FACTS

Heilman accepted employment with the Judicial Probation Department of the Fourth Judicial District for the State of Nevada on January 23, 1995.  *See,* Undisputed Fact ("UF") 1. At the time Heilman was hired she signed a "Letter of Appointment" that provided, in part, that she "may" be terminated as an "at will" employee pursuant to provisions set forth in the now-repealed NRS 62.110. *Id.*

The incorporated portions of this statute relevant to this lawsuit provide that an employee who is "discharged" be given the reasons for being "removed, discharged or reduced in position" in writing and "being afforded *an opportunity* to be heard before the judge in answer thereto (emphasis added)." *Id.*

On June 11, 2003 Defendant James Watson ("Watson") met with Heilman in the presence of Juvenile Court Judge Wong. UF 6 and 9. Heilman claims that Watson stated at this meeting that he was requesting her resignation because she did not "fit into the mold." UF 5.  Heilman did resign and set forth her resignation in writing on June 11, 2003 wherein Heilman wrote, "It seems that Mr. Watson feels, at this time, that I do not fit into the mold." UF 7 and 8.

Heilman did not request, demand or otherwise ask for a writing that reiterated what she was told was the reason for asking that she resign.  Heilman did not avail herself of the "opportunity to be heard before the judge in answer thereto" despite the physical presence of Judge Wong at the meeting of June 11, 2003 when Heilman was terminated.  UF 9 and 16.

Heilman herself provided the required statutory "writing" in accordance with NRS 62.110 and the Letter of Appointment, *i.e.* Heilman's Letter of Resignation, which expressly states a reason for her discharge.  UF 7 and Exhibit D. The presence of Judge Wong at the

exact moment Heilman was requested to resign by Watson "afforded [Heilman] the opportunity to be heard before the judge" in relation to the alleged termination.

NRS 62.110 does not specify the nature of the "writing" contemplated relative to the discharge of an 'at will' employee nor does it mandate who should author the writing.  Further, the statute is silent as to the manner in which the appearance before a judge is to be undertaken or, for that matter, which judge should be addressed for this purpose.

This statute also does not express the timing factors of when the appearance before the judge should occur.  In this instance, the record is devoid of any evidence that Heilman *ever* sought an opportunity to present her comments to any judge at any time.  The record fails to disclose any fact that indicates the slightest effort made by Heilman to obtain either a writing from her employer that sets forth the reasons for her purported termination or a request to schedule a time to appear before "the judge in answer thereto."

Heilman's Motion for Summary Judgment opines, without a scintilla of authority, that the provisions of NRS 62.110 create a right of "written notice" that "provides insurance that the deprivation of one's livelihood not be done lightly."  Heilman's Motion for Summary Judgment, page 4, lines 20-26.  Heilman also hypothesizes and unduly concludes that this statute provides an avenue for a terminated employee to "air a grievance before the judge who will decided [sic] the employee's fate."  *Id.*

Unwittingly, Heilman does articulate one of the critical issues and irreconcilable errors that arise from giving the Letter of Appointment the status of an enforceable contract.  UF 14.  Heilman's Motion correctly concludes that the notice and hearing provisions of the statute, incorporated into the Letter of Appointment, "eliminates the essence of 'at will' employment, that is, employment which is terminable without cause or redress."  *Id.* page 4, lines 20-22.  Giving the Letter of Appointment such an unwarranted distinction would most certainly act to effectively eliminate Heilman's 'at will' employment status – contrary to the express findings of the Court of Appeals and an overwhelming body of case and statutory law.

///

///

It bears noting and emphasis that:

- The Ninth Circuit upheld the District Court's dismissal of Heilman's Due Process claims (*see,* "Order" #52, 8:21-25; Exhibit B, "Memorandum," *supra* at page 7);
- The Ninth Circuit did not overrule or distinguish the District Court's analysis that NRS 62.110 does not convert Heilman's 'at will' employment into one that would morph into a 'for cause' employment status thereby giving rise to a 'property interest' for Due Process purposes, *see,* "Order," *supra* at page 7, lines 7-16;
- The Ninth Circuit confirmed the finding of the District Court that Heilman was an 'at will' employee, *see*, UF 4;
- The Ninth Circuit "Memorandum" misstates the record and undisputed facts when it writes that "[i]t is undisputed that Heilman's employer failed to follow these [a writing and hearing per NRS 62.110] procedures,"; *see,* Exhibit B, page 4; and
- No public policy exception to enforcement of the 'at will' employment status of Heilman has ever been demonstrated.

This dispute is no longer one that involves "good faith and fair dealing," "constructive discharge," or "cause for termination." The matter on remand pits the concepts of contractual doctrines against the widely adopted utilization of 'at will' employment agreements in core Nevada businesses such as the gaming industry and numerous others.

The Ninth Circuit's "Memorandum" has dealt the District Court a void hand with an unplayable joker in the guise of a remand limited to a purported statutorily-created contract that co-exists but also competes with the fundamental principles that constitute 'at will' employment.

This conundrum is, however, one that offers several solutions:

1. The undisputed facts allow the Court to conclude that the "enforceable contract" was not breached;
2. If a different result is reached regarding a breach, the acknowledgement written by Heilman which sets forth the purported reasons for her termination and the presence

      of Judge Wong at the time of the discharge incontrovertibly compel the conclusion that any "breach" led to no proximate contractual harm;

3. NRS 62.110 does not convert an 'at will' employment status to a 'for-cause' employment, therefore, public policy demands 'at will' law to prevail over notice and hearing prerequisites that would eviscerate 'at will' contracts if enforced; and

4. Heilman expressly waived the requirements of and compliance with the provisions of the Letter of Appointment and NRS 62.110 by drafting, executing and tendering her resignation on June 11, 2003 after considering her options, *see,* UF 7.

## V. ARGUMENT

### A. Preliminary Legal and Procedural Rules

#### (1). Summary Judgment Standard of Review

The purpose of summary judgment is to avoid unnecessary trials in cases with no disputed material facts. *Northwest Motorcycle Association v. United States Department of Agriculture*, 18 F.3d 1468, 1471 (9th Cir. 1994). At issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 251-52 (1986).

Two steps are necessary in determining whether summary judgment should be granted. First, according to the substantive law, the court must determine what facts are material. *Id.* at 248. Second, in light of the appropriate standard of proof, the court must determine whether material factual disputes require resolution at trial. *Id.* Factual disputes which are irrelevant or unnecessary will not be considered. *Id.* Summary judgment is not a disfavored procedural shortcut, but an integral part of the federal rules as a whole. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Here, Heilman bears the burden of informing the court of the basis for her motion for summary judgment together with evidence demonstrating the absence of any genuine issue of material fact. *Id.* Heilman may not rest upon mere allegations or denials of the pleadings,

Office of the
Attorney General
100 N. Carson St.
Carson City, NV
89701-4717

but must set forth specific facts showing there are no genuine factual issues for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The existence and absence of material factual issues are proof issues inherent to the moving and opposing parties that are basic to summary judgment law. *West v. Innotrac Corp.*, 463 F.Supp.2d 1169, 1173 (D. Nev. 2006), citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Specifically, Heilman "must establish each element of [her] claim with significant probative evidence tending to support the complaint." *West v. Innotrac Corp.* at 1173, n 3, citing *Barnett v. Centoni*, 31 F.3d 813, 815 (9th Cir. 1994).

"[O]nly evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment." *West v. Innotrac Corp.*, 463 F.Supp.2d at 1173, citing Fed. R. Civ. P. 56(c); *Beyene v. Coleman Security Services, Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988). Establishing the existence of a genuine issue of material issue to be tried will defeat a motion for summary judgment. *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2nd Cir. 1996).

When determining whether a genuinely disputed factual issue exists, "a trial judge must bear in mind the actual quantum and quality of proof necessary to support liability," or "the substantive evidentiary standards that apply to the case." *Anderson,* 477 U.S. at 254-55. A fundamental principle of summary judgment law is that a court must resolve all factual ambiguities and draw all reasonable inferences in favor of the non-moving party. *See, Donahue v. Windsor Locks Board of Fire Commissioners*, 834 F.2d 54, 57 (2nd Cir. 1987).

With specific reference to the appellate-defined "contract" as set forth by the Letter of Appointment, it is axiomatic that "[w]here a written contract is ambiguous and extrinsic evidence is required to discern the parties' intent, summary judgment is inappropriate." *Dickenson v. State Department of Wildlife*, 110 Nev. 934, 939 (1994) citing *Mullis v. Nevada National Bank*, 98 Nev. 513.

The Letter of Appointment is patently ambiguous as to when the written reasons for discharge have to be presented, whether the discharged employee can satisfy this requirement by authoring the reasons herself, what circumstances constitute an "opportunity"

to be heard by a judge, which judge must hear the arguments of the discharged employee and, the extent to which a failure on the part of the discharged employee to act upon these requirements constitutes a waiver.

### (2).  The "Law of the Case" Doctrine

The "law of the case" doctrine generally precludes a court from revisiting or altering an issue that has already been decided by the same trial court or a superior court on appeal. The policy behind this rule is intuitive but nonetheless merits the explanation provided by the U.S. District Court of Nevada:

> The law of the case doctrine becomes meaningless, at least in the context of a single action, in a single court, before a single judge, if the court accords its own prior rulings no deference. Were it otherwise, a party dissatisfied with a prior ruling could reargue the point, without end, and without new evidence or new controlling law. The well-established exceptions to the law of the case doctrine – new evidence, new controlling law, clear error and manifest injustice – provide ample room for adjustment to prior rulings during the course of litigation. Where none of these exceptions applies, the law of the case doctrine "protects the ability of the court to build its final judgment by cumulative rulings, with reconsideration or review postponed until after the judgment is entered (citations omitted)."

*U.S. v. Real Property Located at Incline Village*, 976 F.Supp.1327, 1354 (D.Nev. 1997).

This doctrine means that "[w]hen an appellate court states a rule of law necessary to a decision, that rule becomes the law of the case and must be followed throughout subsequent proceedings." *Emeterio v. Clint Hurt and Associates*, 114, Nev. 1031, 1034 (1998). However, a decision otherwise subject to this doctrine may be reconsidered if "weighty and conclusive reasons" are presented by the facts or law in the subsequent proceedings. *See, generally, Kapp v. Kapp*, 31 Nev. 70, 73 (1909).

More recently, the Nevada Supreme Court has articulated when a departure from the 'law of the case' may occur:

> [T]he United States Supreme Court has concluded that '[u]nder law of the case doctrine, as now most commonly understood, it is not improper for a court to depart from a prior holding if convincedthat it is clearly erroneous and would work a manifest

> injustice. Based on statements such as these, federal courts have adopted three specific exceptions to the law of the case doctrine, concluding that a court may revisit a prior ruling when (1) subsequent proceedings produce substantially new or different evidence, (2) there has been an intervening change in controlling law, or (3) the prior decision was clearly erroneous and would result in manifest injustice if enforced (citations omitted).

*Hsu v. County of Clark*, 123 Nev. 625, 630.

      The *Hsu* court noted that the law of the case doctrine is not a jurisdictional rule and does not a limit to the court's power to reopen an issue or decide a previously ruled upon issue. *Id.* Prior rulings otherwise subject to the law of the case that are deemed "clearly erroneous," (*Clem v. State*, 119 Nev. 615, 620 (2003)), a "fundamental miscarriage of justice," (*Leslie v. Warden*, 118 Nev. 773, 780 (2002) or an "unjust decision" (*People v. Gray,* 37 Cal.4th 168, 33 (2005)) allow for decisions to be revisited.

      Watson offers two arguments that arise from this analysis. First, the portions of the "Memorandum" that uphold the District Court's dismissal of all but the Sixth Claim (breach of contract) are subject to the law of the case doctrine and should control this remanded lawsuit. This is appropriate because there are no "clearly erroneous" or other "unjust" findings or "miscarriage of justice" that can be remotely argued to the contrary.

      Second, the remanded issue as to a breach of contract is outside the penumbra of the law of the case doctrine for several reasons:

1. It is based on the erroneous assumption that "[i]t is undisputed that Heilman's employer failed to follow these [notice and writing] procedures [set forth in the Letter of Appointment]." Exhibit B, "Memorandum," *supra*, at page 4;
2. The undisputed evidence establishes that a writing which accurately set forth the reason for Heilman's termination was drafted by Heilman on the day she was terminated (Exhibit D);
3. Heilman had the express opportunity to address a judge of the court that employed her as to any comments or objections she wished to voice as to her termination (UF 9);

///
///

4. Heilman admits that compelling the notice and writing language of NRS 62.110 and the Letter of Appointment "eliminates the essence of 'at will' employment (Motion, page 4, lines 20-21); and

5. Requiring a notice and writing pursuant to the now-repealed NRS 62.110 prior to terminating an 'at will' employee is demonstrably at odds with the principles and law of 'at will' employment.

### (3) Heilman's Motion Should be Stricken per LR 56-1

Local Rule 56-1 could not be clearer or more express in its mandatory requirement upon each party seeking or opposing summary judgment *shall* set forth "*each fact* material to the disposition of the motion *which the party claims is or is not genuinely in issue…* (Emphasis added)" See, LR-56-1.  A cursory review of Heilman's Motion evidences a total lack of compliance with this forthright rule.

The failure to abide by this Rule is more than mere 'form over substance' in seeking an order that would strike the motion for summary judgment.  The Defendants and, more importantly the Court, is severely deprived in discerning what is or is not deemed undisputed versus disputed facts, what evidence is or is not critical to a determination on the merits of the Motion and, a total lack of reference to the numerous statements of purported fact that are not accompanied by a reference to the evidence in support of these assertions.

In *Pharmacy, Inc. v. American Pharmaceutical Partners, Inc.*, 511 F.Supp.2d 324 (E.D.N.Y., 2007) the court noted that its Local Rule 56.1 required the moving party seeking summary judgment to "include not just some but all of the facts material to its motion that movant contends are undisputed, properly supported by citation to evidence." *Pharmacy,* at page 332.

The *Pharmacy* court cited *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2nd Cir.2001) which set forth the policy behind this Rule: "The purpose of Local Rule 56.1 is to streamline the consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties." *Id*.  The moving party did

not comply with the Rule and the *Pharmacy* court concluded that "[o]n this basis alone, that portion of APP's summary judgment motion should be denied."[3]

### B. Heilman's Motion Should be Denied as a Matter of Law

#### (1). Heilman Received the Benefits Conferred by NRS 62.110

As the undisputed facts set forth above undeniably establish, Heilman did receive a writing that set forth a statement as to why she decided to "regrettably submit[ted] my resignation." Exhibit D. By her own sworn testimony, Heilman confirmed the presence of a judge to whom she could have, but for reasons only she knows, did not avail herself of the *opportunity* (*see,* NRS 62.110; Exhibit A, ¶ 2; "Memorandum, Exhibit B, page 4) to address her opposition or other comments to the judge.

Courts are not empowered to modify or vary the terms of an unambiguous agreement. *State ex rel. List v. Courtesy Motors*, 95 Nev. 103, 107 (1979). Where, as here, the Letter of Appointment clearly does not require Heilman's employer to produce any findings with respect to good cause before a termination (constructive or otherwise), such a "contract" or agreement "must be construed and enforced as written." *Kaldi v. Farmers Ins. Exch.*, 117 Nev. 273, 281 (2001), citing *Ellison v. C.S.A.A.*, 106 Nev. 601, 603 (1990).

Thus, the testimony and documents produced by Heilman conclusively determine that the provisions of the Letter of Appointment and NRS 62.110 were followed. With compliance established by this undisputed evidence, Heilman's arguments are without merit.

#### (2). Heilman Waived her Right to Argue a Breach of Contract

Nearly 100 years ago, Justice Coleman of the Nevada Supreme Court wrote:

> A man may have an equitable right, but there is nothing to prevent his waiving it, and by a certain course of action being estopped from asserting it. It does not follow that because an equitable right once existed it will always exist. To avail oneself of an equitable right, it must be asserted in apt time and diligently prosecuted.

*Daly v. Lahontan Mines Co.*, 39 Nev. 14, 24 (1915).

---

[3] Other courts have held that failure to comply with rules pertaining to setting forth with specificity material facts germane to summary judgment issues allows the court to deem the adverse party's material facts as "deemed admitted" as a matter of law (*see, generally, Cracco v. Vitran Exp., Inc.*, 559 F.3d 625 (7th Cir.2009) and "uncontested" (*see, generally, Reese v. Herbert*, 527 F.3d 1253 (11th Cir. 2008).

Office of the
Attorney General
100 N. Carson St.
Carson City, NV
89701-4717

15

A waiver did occur in this matter when, as Heilman admits by her sworn testimony, she had the opportunity to 'make her case' to Judge Steve Wong who was present at the meeting of June 11, 2003.  The very case cited by the Ninth Circuit offers the rationale in concluding that Heilman had a responsibility to act reasonably and in conjunction with the opportunity that the circumstances offered her at the meeting where she claims she resigned as an alternative to being dismissed from her employment.

In *Hampton v. Wartman,* 85 Nev. 408 (1969), (*see,* "Memorandum," Exhibit B, page 4) the court stated in reference to the 'opportunity to be heard' provisions of the then-applicable NRS 62.100 (2) (f) statute pertaining to terminations of juvenile court employees that:

> The only relevant consideration is the applicability of legislative provisions. NRS 62.100(2)(f) 2  gave the juvenile judge the power to hire and fire the petitioner. He used it. NRS 62.110(1) requires the juvenile judge to afford an opportunity for a hearing before demotion takes place. He did. The judge stood ready to hear petitioner between November 22, 1968 and December 1, 1968 before the demotion became effective; but petitioner did not request a hearing; therefore any absence of redress was occasioned by the petitioner who did not avail himself of the offered opportunity for a hearing.

*Hampton,* at page 410.

The *Hampton* court is crystal clear in placing a fair quantum of responsibility upon the employee to avail herself of the *opportunity* for engaging in the hearing before a judge in conjunction with negative job actions.  As in *Hampton*, the failure of Heilman to take *any* steps in engaging the procedures set forth in NRS 62.110 and the Letter of Appointment are fatal to the "contract" enforcement action the Ninth Circuit would impose upon the Court and Defendants.

### (3).   'At Will' Employment Doctrines are Controlling

"Employment 'at-will' is a contractual relationship and thus governed by contract law. *Smith v. Cladianos*, 104 Nev. 67." *Vancheri v. GNLV Corp.*, 105 Nev. 417, 421 (1989). Simply put, the principles that establish the 'at will' doctrine are routinely found to take precedence over and prevail when competing propositions are insinuated in a manner that would diminish the policy goals of 'at will' employment.

Thus, in numerous areas of the law, efforts to undermine the consequences of the impact and effect of 'at will' employment has been soundly rejected:

- The 'mixed motives' instruction given to juries in Title VII cases is correctly denied because, in an 'at will' employment case, the giving of the instruction would "have a devastating impact on the at-will doctrine." *Thompson v. Abbott Laboratories*, 549 N.E.2d 1295 (Ill. Ct. App. 1990) at page 1309 (concurring opinion of Reinhard, J,).
- Again, in 'mixed motives' litigation, the Nevada Supreme Court has stated, "we conclude that the use of the "mixed motives" concept in the context of wrongful termination cases would have the effect of undermining the Nevada legislature's intent in creating the "at-will" doctrine." *Allum v. Valley Bank of Nevada,* 114 Nev. 1313, 1320 (1998).
- The employees in an age discrimination case were denied the use of language in an "employment handbook" to contradict or convert their 'at will' employment to permit the plaintiffs to pursue a breach of contract claim. *Sands Regent v. Valgardson*, 105 Nev. 436, 439 (1989).
- Extrinsic language set forth in an employee handbook can serve to modify the employer's common law right to discharge Smith "at its whim." *Smith v. Cladianos*, 104 Nev. 67, 68-69 (1988).
- Even the exceptionally strong public policy that prohibits age (NRS 233.010) and racial discrimination (NRS 613.310) cannot serve as an exception to the application of the 'at will' status of an employee who has been terminated for age or racial discrimination. *Sands Regent, supra; see also, Chavez v. Sievers*, 118 Nev. 288, at 299 (2002) (concurring opinion); *Hirschhorn v. Sizzler Restaurants Int'l, Inc.*, 913 F. Supp. 1393, at 1401, 1402 (D. Nev. 1995).

**C.     Heilman's Complaint is Subject to Interlocutory Summary Adjudications**

Rule 56 (d) (1) and (2) allows for the Court to determine what material facts are not genuinely at issue (subsection (1)) and to issue an interlocutory summary judgment as to liability alone "even if there is a genuine issue on the amount of damages" (subsection (2)).

The Court is also empowered to enter summary judgment in favor of the non-moving party that has not filed a cross-motion for summary judgment. *See, generally,* 10A, Wright, *et al., Federal Practice & Procedure*, §2720 (3d Ed., 2010 Update) and n. 25 and 26.

The Court has multiple options and could issue any of the following Orders:

1. The undisputed facts establish that Heilman has no cognizable claim under any theory set forth in the Ninth Circuit's "Memorandum" and remand and, therefore, Watson and Mimeo are entitled to summary judgment, *sua sponte*;
2. NRS 62.110 and the pre-termination provisions of the Letter of Appointment was complied with as established by the testimony of Heilman;
3. NRS 62.111 and the pre-termination provisions of the Letter of Appointment were waived by Heilman;
4. No genuine issue of fact exists that would contradict the existence of a letter setting forth what Heilman claims she was told was the reason for being termination;
5. No genuine issue of fact exists that would contradict that on June 11, 2003 Heilman had the opportunity to present her comments regarding the alleged termination to Judge Wong who was present when Heilman met with Watson on June 11, 2003;
6. Heilman was at all relevant times an 'at will' employee and, as such, could not have sustained any monetary damages by a failure to comply with NRS 62.110 or the Letter of Appointment.

Other entirely dispositive or interlocutory findings may be apparent to the Court. Watson urges that all available dispositions of this litigation be considered by the Court and availed upon if the facts and law so warrants.

## VI.   CONCLUSION

Heilman's sole remaining cause of action for an appellate-created contract is subject to summary judgment because, even when accepting Heilman's testimony and evidence as true, the law acts to deny the existence of any breach of an enforceable contract. The "terms" of the "contract" were fulfilled by Watson as is evidenced by the testimony of Heilman herself.

///

1  Notwithstanding the Ninth Circuit's remand, provisions of NRS 62.110 and the Letter of
2  Agreement, all of the evidence and undisputed facts establish that Heilman waived any
3  purported contract rights she may have had because Heilman had the opportunity to engage
4  in the notice and writing procedures but affirmatively and admittedly did not do so.

5  Public policy forbids the imposition of NRS 62.110 or the Letter of Appointment to
6  prevail in such a manner as to abrogate the 'at will' employment policies of Nevada. Heilman
7  herself, in the Motion for Summary Judgment, admits that this would be the result of applying
8  the Ninth Circuit's ruling and remand as she requests the Court to do in her Motion.

9  Finally, the Court has many options to either deny the Motion and dismiss Heilman's
10 lawsuit *sua sponte*, make factual finding in addition to denying the Motion or, making other
11 interlocutory findings and conclusions that will narrow the issues or permit a subsequent Rule
12 12 motion in accordance with the 'law of the case' doctrine.

13 Dated this 1st day of June, 2010.

Respectfully submitted,

CATHERINE CORTEZ MASTO
Attorney General

By_____
Clark G. Leslie
Senior Deputy Attorney General
Bureau of Public Affairs
Division of Public Safety

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I certify that I am an employee of the Office of the Attorney General, State of Nevada, and that on this 1st day of June, 2010, I caused to be served, **DEFENDANT WATSON'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (#69)** by U.S. District Court CM/ECF Electronic Filing to:

JAMES ANDRE BOLES ESQ
LAW OFFICE OF JAMES ANDRE BOLES
423 MILL ST
RENO NV 89502-1025

WILLIAM C JEANNEY ESQ
BRADLEY DRENDEL & JEANNEY LTD
401 FLINT ST
PO BOX 1987
RENO NV 89505-1987

_____

G:\LITIGATION\Carson\Support Staff\Howe, Kat\!!Leslie\Cases\Heilman 683\Opp to MSJ.doc

Office of the
Attorney General
100 N. Carson St.
Carson City, NV
89701-4717